ACCEPTED
13-14-00594-CR
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
4/16/2015 10:12:32 PM
DORIAN RAMIREZ
CLERK

13-14-00594-CR

IN THE COURT OF APPEALS
THIRTEENTH JUDICIAL DISTRICT
CORPUS CHRISTI, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
4/16/2015 10:12:32 PM
DORIAN E. RAMIREZ
Clerk

_____

ELENILSON FLORES RODRIGUEZ,

Appellant

VS.

THE STATE OF TEXAS,

Appellee

_____

ON APPEAL FROM THE 389TH DISTRICT COURT
OF HIDALGO COUNTY, TEXAS
CAUSE NUMBER CR-4560-13-H

_____

FIRST AMENDED BRIEF FOR THE APPELLANT
ELENILSON FLORES RODRIGUEZ

_____

ROBERT D. PUENTE
LAW OFFICE OF ROBERT D. PUENTE
1315 W. POLK, STE 24
PHARR, TEXAS 78577
TEL.956- 502-5258
FAX.956-618-9904
SBN 24013359
robpuente@msn.com

ORAL ARGUMENT REQUESTED   ATTORNEY FOR APPELLANT

1

# TABLE OF INTERESTED PARTIES

Ms. Hope Palacios
Assistant District Attorney
100 N. Closner
Edinburg, Texas, 78539

State's Trial Counsel

Mr. Eloy I. Hernandez
Palacios & Associates
2724 W. Canton Rd.
Edinburg, Texas 78539

Trial Counsel

Hon. Leticia Lopez
Judge Presiding
389th District Court
Hidalgo County, Texas

Trial Court Judge

Robert D. Puente
1315 W. Polk, Ste 24
Pharr, Texas 78577

Appellant's Counsel

Theodore C. Hake
Assistant District Attorney
100 N. Closner
Edinburg, Texas 78539

Appellee's Counsel

TABLE OF CONTENTS                                PAGE(S)

Table of Interested Parties………………………………………………….……2

Table of Contents…………………………………………………………3

Table of Authorities…………………………………………………… 4

Statement of the Case…………………………………………………….…7

Issues Presented……………………………………………………….8

Summary of the Argument…………………………………………………...9

Appellant's First Point of Error……………………………………………...……9

Appellant's Second Point of Error……………………………………………..…..13

Appellant's Third Point of Error……………………………………………..…..19

Appellant's Fourth Point of Error……………………………………………..……25

Conclusion and Prayer……………………………………………….…..30

Certificate of Service…………………………………………………….31

Certificate of Compliance…………………………..………………….……31

## TABLE OF AUTHORITIES

STATE CASES                                              PAGE

Alvarado v. State, 853 S.W.2d 17, 20 (Tex. Crim. App. 1993)………25,26

Bokor v. State, 114 S.W.3d 558, 560 (Tex. App.-Fort Worth 2002, no pet.)……………………………………………………………………17

Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)…………17

Byrd v. State, 336 S.W.3d 242 (Tex. Crim. App. 2011)………..20-22

Clayton v. State, 235 S.W.3d 772, 778 (Tex Crim. App. 2007)…………………………………………………………………16

Davis v. State 947 S.W.2d 240, 245 (Tex. Crim. App. 1997)…………24-25

De La Paz v. State, 279 S.W.3d 336, 343-344, (Tex. Crim. App. 2003)..28

Earl v. State, 514 S.W.2d 273 (Tex. Cr. App., 1974)………………..17,22

Flores v. State, 888 S.W.2d 187, Tex. App.-Houston [1 Dist], 1994)…18

Griffin v. State, 614 S.W.2d 155 (Tex.Crim.App., 1981)………………..18

Hawkins v. State, 214 S.W.3d 668, 670 (Texas App.-Waco, 2007, no pet.)……………………………………………………………………18

Herrera v. State, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007)………..24

Hill v. State, 633 S.W.2d 520, 521 (Tex.Crim App. 1981)…………18,19

Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed 2d 560 (1979)……………………………………………………………16,20

Joseph v. State 865 SW2d 100, 102 (Tex. App-Corpus Christi, 1993) pet. ref'd……………………………………………………………………25

Lane v. State, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996)……………30

Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)….20

Mann v. State, 642 S.W.2d 53, Tex.App. 6 Dist.,1982)…………22

Martinez v. State, 272 S.W.3d 615 (Tex. Crim. App 2008)….26-27

Montgomery v. State, 810 S.W.2d 372, 391(Tex. Crim. App.1990)…28

Moore v. State, 700 S.W.2d 193, 201 (Tex. Crim. App. 1985), *cert. denied,* 474 U.S. 1113,106 S.Ct 1167 (1986)…………………………………….30

Nolen v. State, 872 S.W.2d 807, 812 (Tex. App.-Fort Worth 1994), pet.ref'd, 897 S.W.2d 789 (Tex. Crim. App. 1995)…………………………..29-30

Parks v. State, 746S.W.2d 738, 740 (Tex. Crim. App. 1987)…….30

Patrick v. State, 906 S. W. 2d 481, 487 (Tex. Crim. App. 1995)……18

Plante v. State 692 S.W.2d 487,491-92 (Tex. Crim. App.1985)……30

Rankin v. State, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996)……..29

Rowland v. State 744 S.W.2d 610, (Tex. Crim App. 1988)……………18

Santellan v. State, 939 S.W.2d 155, 168-69 (Tex. Crim. App. 1997)…..29

Smith v. State, 507 S.W.2d 779, 781 (Tex. Crim. App. 1974)………...27

State v. Avila, 910 S.W.2d 505, 508 (Tex. App.-El Paso 1994, pet.ref'd).25

State v. Ortiz, 346 S.W.3d 127, (Tex.App.–Amarillo, 2011)……….25-26

State v. Ross, 32 S.W.3d 853,856, (Tex. Crim App. 2000)……………23

Temple v. State, 390 S.W.3d 341, 360( Tex. App. 2013)…………………………………………………………………16

Turner v. State, 715 S.W.2d 847, 852 (Tex. App-Houston [14th Dist.], 1986, pet.ref'd)…………………………………………………………….29

Vasquez v. State, 67 S.W.3d 229, 239-40 (Tex. Crim. App. 2002)….29

Villarreal v. State, 61 S.W.3d 673, (Tex.App.–Corpus Christi, 2001)….26

Ward v. State, 657 S.W.2d 133, 136 (Tex. Crim. App 1983)………….27

Williams v. State, 948 S.W.2d 954, 956 (Tex. App.-Waco 1997, pet. ref"d)………………………………………………………...29

RULES

Tex. Penal Code Ann, section 31.01(2)(A)…………………………..17

Texas Penal Code 31.03 (a)……………………………………………17

Texas Rule of Evidence 404(b)……………………………………….28

Texas Rule of Evidence 403…………………………………………..29

Texas Code of Criminal Procedure 38.22…………………………26-27

NO. 13-14-00594-CR

| | | |
|---|---|---|
| ELENILSON FLORES RODRIGUEZ, | § | IN THE COURT OF |
| Appellant | § | APPEALS, 13TH |
| v. | § | JUDICIAL DISTRICT |
| THE STATE OF TEXAS, | § | CORPUS CHRISTI, |
| TEXAS | | |
| Appellee | | |

STATEMENT OF THE CASE

To the Honorable Thirteenth Court of Appeals:

Now Comes, Elenilson Flores Rodriguez, appellant in the case herein, by and through Robert D. Puente, and Attorney-at-Law, and files this brief in cause number 13-14-00594-CR. The appellant was charged by way of an indictment with the offense of Aggravated Robbery in cause number CR-4560-13-H.  Following a jury trial in 389th District Court, Hidalgo County the appellant was found guilty of the offense as charged in the indictment. The jury assessed punishment at twenty five (25) years of confinement in the institutional division of the Texas Department of Corrections.  Notice of appeal was filed and this appeal, alleging four points of error, has followed.

7

ISSUES PRESENTED

APPELLANTS FIRST POINT OF ERROR

The trial court erred in not granting Appellant's motion for directed verdict as there was no evidence, or legally and factually insufficient evidence, to meet the elements of aggravated robbery as stated in the indictment, because no rational trier of fact could have found the substantive elements of the underlying theft offense beyond a reasonable doubt.

APPELLANTS SECOND POINT OF ERROR

The trial court erred in not granting Appellant's motion for directed verdict as there was no evidence, or legally and factually insufficient evidence, to meet the elements of aggravated robbery as stated in the indictment, because no rational trier of fact could have found the substantive elements of the underlying theft offense beyond a reasonable doubt, as the correct owner of the property was never identified.

APPELLANTS THIRD POINT OF ERROR

The trial court erred in not granting Appellant's motion to suppress statements made by the accused, as there was no evidence, or legally and factually insufficient evidence, that Appellant was not in custody and his statements were a result of custodial interrogation made without benefit of Miranda warnings and such statements resulted in harmful error.

## APPELLANTS FOURTH POINT OF ERROR

The trial court erred in not granting Appellant's objection to allow testimony concerning Defendant's statement of false identity as this statement did not fall under a Texas Rule of Evidence 404(b) exception and such statement resulted in harmful error.

## SUMMARY OF ARGUMENT

Appellant contends that the State presented legally and factually insufficient evidence of aggravated robbery. The Court erred in not granting Appellant's motion for directed as a jury could not find beyond a reasonable doubt the elements of theft that form the gravamen of aggravated robbery. The Court also erred in not granting Appellant's motion for directed verdict as the State never presented legally and factually sufficient evidence of the owner of the property in the aggravated robbery. The Court erred in improperly admitting statements that were the result of custodial interrogation without benefit of the warnings of Texas Code of Criminal Procedure 38.22 and improperly admitted evidence of a statement of a false identity by the Appellant.

## STATEMENT OF FACTS

Jessica Jasso, the victim, testified that Appellant tapped the door of the truck she sat in with his gun and said open the door. CR Vol 16, p 189 line 7-16. When the State asked what the Appellant said with reference to the vehicle, she stated:

Q. Did he make any comments to you in reference to the vehicle?

A. He just kept telling me to open the door and I said, No.

CR Vol 16, p.189, lines 13-16. The victim continued her testimony that the Appellant attempted to pull the car door, but was distracted momentarily, at which the victim backed the vehicle away. CR Vol 16, p. 189, lines 17-25;p. 190 lines 1-4. As the victim was backing the vehicle away, she stated that the Appellant fired at her with his weapon. CR Vol 16, p.190, lines 4-5. The victim later reaffirmed that the Appellant had stated to open the door, without adding more. CR Vol 16, p.204, lines 3-7.

Officer Manuel Flores, the McAllen Police officer who first responded to the incident, stated that the call was "about a female stating that somebody shot at her" CR Vol 16, p.19, lines 14-15. He provided no further testimony concerning any theft, or what property was to be stolen. The State's other witnesses testified primarily about the victim's identification of Appellant and where the handgun allegedly used by Appellant was found.

The indictment in the instant case read, in part:

> "that Elenilson Flores-Rodriguez, herein after styled defendant, on or about the 26th dayof October A.D. 2013, and before the presentment of this indictment in Hidalgo County, Texas did then and there while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally and knowingly threatened or placed Jessica Jasso in fear of imminent bodily injury or death. And the defendant did then and there use or exhibit a deadly weapon, to wit: A firearm. Against the peace and dignity of the State, signed by the foreperson of the grand jury."

11

CR Vol 16, p.9, lines 13-24.

The State asked the victim, Jessica Jasso, several questions that assumed an

ownership. For example,

Q. Did you drive yourself to that location?
A. Yes, I did.

Q. What type of vehicle were you driving?
A. A 2006 Dodge Ram.

Q. What color was that vehicle?
A. White.
Q. Was anyone else with you in the vehicle?
A. No.

Q. Now, do you remember about what time, more or
less, you arrived at London's?
A. A little bit before midnight.

Q. And where, specifically, did you park your
vehicle?
A. It was on the north side of the building, which
is the back.

CR Vol 16, p.182, lines 24-25; p.183, lines 1-13. Jessica Jasso never

testified that she was the owner of the vehicle. The remainder of her

testimony concerned her encounter with the assailant, her description and

purported identification of the assailant, and her whereabouts before the

incident. CR Vol 16, pp.182-208. None of the McAllen Police officers and

Investigators called as witnesses testified that they ran a vehicle check on the

truck purportedly driven by the victim to confirm the ownership of the vehicle. CR Vol 16, pp.171-81 (Investigator Ismael Cruz); CR Vol 16, pp.150-171(Sgt. Agapito Gonzalez) CR Vol 16, pp.15-38 (Off. Manuel Flores); CR Vol 16, pp.63-105 (Off. Josue Mendez).

Officer Josue Mendez, the first police officer to identify Appellant as he was found near the scene of the incident, placed Appellant in handcuffs, first for officer safety, then for investigative purposes. CR Vol 16, p.45, lines 12-20; p.46, lines 1-4. Officer Mendez stated that after he was handcuffed, Appellant was not free to leave. CR Vol 16, p.45, lines 12-20. Appellant was not read any warnings found in Texas Code of Criminal Procedure 38.22.Id. Off. Mendez asked Appellant where he was coming from, to which Appellant replied from a bar where he was drinking with an unnamed friend. CR Vol 16, p.42, lines 12-25. Off. Mendez stated that before Appellant was placed under arrest, he told Appellant he was under investigation for an aggravated robbery. CR Vol 16, p.46, lines 1-15. Off. Mendez told Appellant before the victim arrived that Appellant fit the description of the assailant. CR Vol 16, p.46, lines 10-14. All of appellant's statements were made after he was handcuffed. CR Vol 16, p.47, lines 21-24. No Miranda warnings were given to Appellant while in handcuffs.

13

Appellant was placed under arrest after the victim identified him at the scene as the assailant, at which the following exchange occurred:

Q. Okay. So as he was advised that, he was placed under arrest. Did the defendant say anything at that time?
A. Yes, ma'am.

Q. Can you tell the Court specifically what the defendant said?
A. Yeah, he quoted, How am I getting arrested if I didn't have a gun?

Q. Was that in response to any type of questioning?
A. No. I mean, I never mentioned a gun or anything

CR Vol 16, p.44, lines 4-13. The Court admitted Appellant's statement concerning the handgun, reasoning it was a voluntary statement CR Vol 16, p.57, lines 20-27.

Appellant was alleged to have given Officer Mendez a false name when this officer encountered Appellant and handcuffed him. At trial, Appellant objected to the false identity statement, under Texas Rules of Evidence 404(b) and 403. CR Vol 16, p.54, lines 17-25; p.55, lines 1-16. The court allowed the statement, reasoning that Appellant was not in custody and was asked for identification. CR Vol 16, p.56, lines 25-26; p.57, lines 1-4. The Court stated that the State would not be allowed to raise the issue of Appellant's arrest for false identity. Id. The Court suggested that a

14

limiting instruction could be read regarding the false identity, allowing its use to prove motive, opportunity, intent, and identity. CR Vol 16, p.61, lines 1-5. The Court read the aforementioned limiting instruction following the latter testimony of Officer Josue Mendez. CR Vol 16, p.84, lines 11-21.

Q. Okay. And can you tell the jury, did you ask him
his name and date of birth?
A. Yes, ma'am.
Q. And what did he tell you his name was?
A. Okay. The first thing he identified himself as
Carlos Humberto Rodriguez, his date of birth, 11-25-69.
CR Vol 16, p.79, lines 18-23.

Q. (By Mrs. Palacios) During the course of the
investigation, Officer, was it determined that Carlos
Humberto Rodriguez was not the defendant's name?
A. Yes, ma'am.
Q. And can you tell the jury what his true and
correct name was or is?
A. It's Elenilson Flores-Rodriguez; date of birth,
11-25-69.
CR Vol 16, p.84, lines 3-10.

15

ARGUMENT

APPELLANTS FIRST POINT OF ERROR

The trial court erred in not granting Appellant's motion for directed verdict as there was no evidence, or legally and factually insufficient evidence, to meet the elements of aggravated robbery as stated in the indictment, because no rational trier of fact could have found the substantive elements of the underlying theft offense beyond a reasonable doubt.

STANDARD OF REVIEW

When reviewing the legal sufficiency of the evidence, an appellate court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed 2d 560 (1979). See Temple v. State, 390 S.W.3d 341, 360( Tex. App. 2013).This review standard requires an examination of all the evidence, both properly and improperly admitted, to determine whether the cumulative force of all the evidence (direct, circumstantial, or both) supports the verdict when such evidence is viewed in the light most favorable to that verdict. Clayton v. State, 235 S.W.3d 772, 778 (Tex Crim. App. 2007). A single standard applies to both legal and

16

factual sufficiency. Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

ARGUMENT AND AUTHORITIES

While the indictment for an aggravated robbery need not include specifically the elements of theft, the proof will involve proving up a theft or attempted theft. Earl v. State, 514 S.W.2d 273, 274 (Tex. Crim App. 1974) A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code Ann, section 31.03(a). In a theft case, the State must prove that (1) a person (2) with intent to deprive the owner (3) unlawfully appropriated (4) property. Id.;Bokor v. State, 114 S.W.3d 558, 560 (Tex. App.-Fort Worth 2002, no pet.). In the theft statute, "'[a]ppropriate' means . . . to acquire or otherwise exercise control over property other than real property." "'Deprive' means . . . to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner". Tex. Penal Code Ann, section 31.01(2)(A) (West Supp. 2012). Only the intent to deprive, not the actual deprivation, must be proven to establish theft. Hawkins v. State, 214 S.W.3d 668, 670 (Texas App.-Waco, 2007, no pet.)(citing Tex. Penal Code Ann. § 31.01(4)(B)). A jury may infer an

17

individual's intent from his conduct. Patrick v. State, 906 S. W. 2d 481, 487 (Tex. Crim. App. 1995).

In cases where intent to deprive was found, the defendant would appropriate the property temporarily and the property would be later found abandoned. See Griffin v. State, 614 S.W.2d 155 (Tex.Crim.App., 1981)( intent inferred where defendant ordered taxi cab driver out of car and then drove car and later abandoned the car); Rowland v. State 744 S.W.2d 610, (Tex. Crim App. 1988)( intent inferred where defendant borrowed a truck from victim and promised to return it in three days, but never did): Hill v. State, 633 S.W.2d 520, 521 (Tex.Crim App. 1981)( intent inferred where defendant handled pistol at gun store and placed it under his shirt, before leaving the gun and running out of the gun store). Conversely, where the vehicle was returned quickly, robbery was not found, as the elements would support an unauthorized use of vehicle charge. But see, Flores v. State, 888 S.W.2d 187, Tex. App.-Houston [1 Dist], 1994) (No intent to deprive of motor vehicle where it was returned 3 hours later, damaged).

The State failed to provide legally sufficient evidence that Appellant intended to steal the vehicle driven by the victim, Jessica Jasso There was no further evidence of what Appellant unlawfully appropriated nor what property he intended to deprive. Moreover, the victim was never directly

asked if she was the owner or special owner of the vehicle she was driving, nor does the indictment make reference to the property to be stolen or the owner of said property. There was no testimony that Appellant ever exercised any control over the vehicle. See Hill v State at 521. To be sure, the testimony presented could be consistent with other charges, such as attempted aggravated assault. As such, no rational trier of fact could infer an intent to deprive the owner of property, where there is no evidence, direct or circumstantial, that Appellant attempted a carjacking. Therefore the conviction should be reversed and rendered.

APPELLANTS SECOND POINT OF ERROR

The trial court erred in not granting Appellant's motion for directed verdict as there was no evidence, or legally and factually insufficient evidence, to meet the elements of aggravated robbery as stated in the indictment, because no rational trier of fact could have found the substantive elements of the underlying theft offense beyond a reasonable doubt, as the correct owner of the property was never identified.

STANDARD OF REVIEW

Appellant incorporates the standard of review applied in Point of Error 1, supra.

ARGUMENT AND AUTHORITIES

The Texas Court of Criminal Appeals considered a case where the indictment read that the owner of the property stolen in a theft case was named as Mike Morales, but the true owner in this shoplifting case was Walmart. Byrd v. State, 336 S.W.3d 242 (Tex. Crim. App. 2011). The Court reasoned as follows:

> "In Jackson v. Virginia, supra, the Supreme Court held that federal due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. The Due Process Clause protects a person from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' But the Court also stated that this constitutional standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Thus, the "elements" or "facts necessary" to constitute a particular crime are determined by state law. Under Texas state law, we measure the sufficiency of the evidence "by the elements of the offense as defined by the hypothetically correct jury charge for the case." Such a charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." Thus, we apply the Jackson standard of review to the hypothetically correct jury charge. But sometimes the words in the indictment do not perfectly match the proof at trial. Byrd at 246 (citing Jackson v. Virginia, 443U.S.307, 316 (1979); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)

The Court in Byrd made a distinction between a variance, which is where the name of the owner would be somewhat different than the owner

20

proved a trial, but where the defendant had substantive notice, and where the name is completely distinct. <u>Id</u>. At 247. The court compared the substance of the charge and the indictment as: "the materiality of defects in indictments and jury charges has been analyzed by looking to the essential elements of the particular criminal offense— the gravamen of that offense— and the hypothetically correct jury charge under the specific indictment or information. In turn, the sufficiency of the evidence has been measured in the same manner. <u>Id</u> at 247.

Finding that the gravamen of theft included correctly naming the owner of the property, the Court in <u>Byrd</u> declined to consider the State's argument of no harm inasmuch as everyone at the trial knew Walmart was the correct owner of the property from the Walmart store, stating:

> "But is the State correct? " What's in a name? That which we call a rose/By any other name would smell as sweet." No matter what we call it, this flower is still a rose. But a rose does not smell like a pickle. Are roses and pickles interchangeable? Is the evidence legally sufficient under Jackson, Malik, and Fuller if everyone knew that it was really Wal-Mart who owned the stolen property, so it just did not matter who was alleged as the owner in the information and jury charge? The information could have alleged " Simon Legree," " Carnac the Magnificent," or " Macy's" for all we care, because it was undisputed at trial that Wal-Mart owned the property. No. The parties, the court, and the jury must know the identity of the owner, regardless of how the State names him". <u>Byrd</u> at 253-254.

21

While other cases have been sustained, where the victim of an aggravated robbery is implied in the indictment, in no other case identified where the property owner is not named in either the indictment or in the case in chief has the case been sustained. See e.g. Mann v. State, 642 S.W.2d 53, Tex.App. 6 Dist.,1982 (Aggravated robbery indictment was not deficient on ground that it failed to state who was owner of the stolen property, where it recited that on a specified date the defendant while in the course of committing theft and with intent to obtain motor vehicle from named individual without effective consent of that individual and with intent to deprive that individual of the property did intentionally and knowingly cause serious bodily injury to the named individual by kicking him); Earl v. State, 514 S.W.2d 273 (Tex. Cr. App., 1974) (where indictment read "while in the course of committing theft of Three hundred, twenty-eight dollars ($328.00) current money of the United States of America, hereinafter called 'the property' from Jack Hamblett", court held sufficient notice of property and person to sustain conviction).

In the instant case, the owner is never confirmed through admissible evidence. Like the property in Byrd, all witnesses assumed ownership of the vehicle, but no testimony from the victim established ownership, nor did the police corroborate ownership. Moreover, assuming arguendo that the

22

allusions and assumptions peppered in the questions asked by the state provide defendant with notice of ownership, the indictment does not name the property that was allegedly stolen, nor does it state with sufficient specificity that the property was owned by the victim. Therefore, there is legally and factually insufficient evidence to sustain a conviction for aggravated robbery. The case should be reversed and remanded to the trial court for a new trial.

## APPELLANTS THIRD POINT OF ERROR

The trial court erred in not granting Appellant's motion to suppress statements made by the accused, as there was no evidence, or legally and factually insufficient evidence, that Appellant was not in custody and his statements were a result of custodial interrogation made without benefit of Miranda warnings and such statements resulted in harmful error.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress, we afford almost total deference to the trial court's determination of the historical facts that the record supports, especially when the trial court's findings turn on evaluating a witness's credibility and demeanor. State v. Ross, 32 S.W.3d

853,856, (Tex. Crim App. 2000). We afford the same amount of deference to the trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if resolving those ultimate questions turns on evaluating credibility and demeanor. Ross at 856. However, we review *de novo* questions of law and "mixed questions of law and fact" that do not turn on an evaluation of credibility and demeanor. Id. At 856 With reference to a determination of whether the defendant was in custody at the time the statements were made, more specifically, a trial court's ultimate "custody" determination "presents a 'mixed question of law and fact.' " Herrera v. State, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). Therefore, we afford almost total deference to a trial court's "custody" determination when the questions of historical fact turn on credibility and demeanor. Id. at 527. Conversely, when the questions of historical fact do not turn on credibility and demeanor, we will review a trial judge's "custody" determination de novo. Id.

ARGUMENT AND AUTHORITIES

Investigative stops must be temporary and last no longer than is necessary to effectuate the purpose of the stop, and the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. Davis v.

24

State 947 S.W.2d 240, 245 (Tex. Crim. App. 1997). The constitutional considerations for post-stop investigations are whether the detention was too long in duration, whether police officers diligently pursued means of investigation that were likely to confirm or dispel their suspicions quickly, and whether police officers were unreasonable in recognizing less intrusive alternative means by which their objectives might have been accomplished. Joseph v. State 865 SW2d 100, 102 (Tex. App-Corpus Christi, 1993) pet. ref'd. Where no findings of fact are filed by the trial court, "we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." Ross at 855. If the trial judge's ruling on a motion to suppress is correct on any theory of the law applicable to the case, we will sustain it. State v. Avila, 910 S.W.2d 505, 508 (Tex. App.-El Paso 1994, pet.ref'd).

If defendant is stopped and handcuffed, it's a detention for Miranda purposes. State v. Ortiz, 346 S.W.3d 127, (Tex.App.–Amarillo, 2011).

The prosecution may not use statements stemming from custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Alvarado v. State, 853 S.W.2d 17, 20 (Tex. Crim. App. 1993). Limited

statements made by a defendant post arrest may be admissible. Where the defendant provides statements that directly lead to the discovery of corroborating evidence, then the statement may be admissible, notwithstanding the failure to meet the requirements of Texas Code of Criminal Procedure 38.22. Villarreal v. State, 61 S.W.3d 673, (Tex.App.– Corpus Christi, 2001).

The statements provided by Appellant subsequent to his handcuffing were made while in custody, without benefit of Texas Code of Criminal Procedure 38.22 warnings. The Court erred in finding these statements admissible, as Appellant was detained and not free to go. CR Vol 16, p.58, lines 13-19. The answers Appellant provided were clearly responses to questions posed by the police. As the court reasoned in Ortiz, where the defendant is handcuffed and not free to go, as he was in the instant case, he is detained for Miranda purposes. Ortiz at 127.

But, as noted above, the police had already begun interrogating Appellant before the formal arrest, even going as far as stating that Appellant fit the description of the assailant. As such, given the totality of circumstances, the "voluntariness" of the statement cannot be sustained, as it was in reaction to prior interrogation. See Martinez v. State, 272 S.W.3d 615

(Tex. Crim. App 2008)( pre arrest interrogation considered in determination of voluntariness of post arrest, post Miranda statements)

Moreover, the statement has no bearing on the credibility of the accused as a witness, as required by Section 5 of Texas Code of Criminal Procedure 38.22. Appellant did not testify, nor did Appellant offer any statements he made previously into the record.

To the extent the Court may have reasoned that the statement concerning the firearm was res gestae of the arrest, there was no evidence presented regarding the context of the statement. The record must show that "the declarant was excited or emotionally stimulated or in the grip of a shocking event so as to render the statement a spontaneous utterance." Ward v. State, 657 S.W.2d 133, 136 (Tex. Crim. App 1983). When determining whether a statement is admissible as *res gestae,* the first concern is whether Miranda requires its exclusion. Smith v. State, 507 S.W.2d 779, 781 (Tex. Crim. App. 1974). In the instant case, there is no record of whether the statement was made emotionally or in the grip of a shocking event. It is clear that Appellant was not read his Miranda rights before the statement was made. Therefore, the statement should be suppressed, the conviction reversed, and the case remanded for a new trial.

27

APPELLANTS FOURTH POINT OF ERROR

The trial court erred in not granting Appellant's objection to allow testimony concerning Defendant's statement of false identity as this statement did not fall under a Texas Rule of Evidence 404(b) exception and such statement resulted in harmful error.

STANDARD OF REVIEW

We review the trial court's determination of admissibility for purposes other than character conformity under an abuse of discretion standard. Montgomery v. State, 810 S.W.2d 372, 391(Tex. Crim. App.1990).

As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. De La Paz v. State, 279 S.W.3d 336, 343-344, (Tex. Crim. App. 2003) A trial court's ruling is generally within this zone if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. Id at 344. Proponent of the bad character evidence must persuade Court that evidence "tends to establish some elemental fact, such as motive, opportunity, or preparation, leading inferentially to an elemental fact; or that it rebuts a defensive theory by

28

showing, e.g. absence of mistake or accident" <u>Santellan v. State</u>, 939 S.W.2d 155, 168-69 (Tex. Crim. App. 1997). The introduction of such evidence also depends on its relevancy to a fact of consequence i.e. an elemental fact or an evidentiary fact. Relevancy is implied in the rule. <u>Rankin v. State</u>, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996).

ARGUMENT AND AUTHORITIES

Courts have held extraneous offenses may be admissible in proving motive to commit the charged offense. <u>Turner v. State</u>, 715 S.W.2d 847, 852 (Tex. App-Houston [14th Dist.], 1986, pet.ref"d). See e.g. <u>Vasquez v. State</u>, 67 S.W.3d 229, 239-40 (Tex. Crim. App. 2002) (evidence of membership in a gang admissible to show motive of a gang-related crime).

Extraneous acts used to prove opportunity may be introduced to show that the Defendant had the opportunity to commit the charged act, such as evidence that Defendant had access to the crime scene, or possessed special skills that were used in the commission of the crime. See <u>Williams v. State</u>, 948 S.W.2d 954, 956 (Tex. App.-Waco 1997, pet. ref"d)( defendant prior two burglaries of the same home, where he entered without opening doors used to prove opportunity where the same home was burned from the inside without the doors being opened). The nexus between the extraneous offense to knowledge or opportunity in the charged offense must be direct. <u>Nolen v.</u>

29

<u>State</u>, 872 S.W.2d 807, 812 (Tex. App.-Fort Worth 1994), pet.ref'd, 897 S.W.2d 789 (Tex. Crim. App. 1995)( evidence of prior burglary conviction where glassware was stolen too indirect to prove opportunity or knowledge that drugs were manufactured in charged offense).

Extraneous offense evidence is offered prove intent when intent cannot be easily inferred by the conduct itself. <u>Plante v. State</u> 692 S.W.2d 487,491-92 (Tex. Crim. App.1985). The intent goes to the charged offense. <u>Parks v. State</u>, 746S.W.2d 738, 740 (Tex. Crim. App. 1987)

Identity and the rebuttal of defenses are both valid purposes for admitting evidence under Rule 404(b). Id. At 388.  An extraneous offense may be admissible to show identity only when identity is an issue in the case. <u>Moore v. State</u>, 700 S.W.2d 193, 201 (Tex. Crim. App. 1985), *cert. denied,* 474 U.S. 1113,106 S.Ct 1167 (1986). Identity must be a disputed issue. <u>Lane v. State</u>, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996)

The false identity evidence did not meet any of the exceptions found in the limiting instructions from the court. No evidence showing that Appellant was motivated by secreting his name in the commission of an aggravated robbery was offered. Here, hypothetical evidence of the assailant being involved in a fight that night in another bar, or a fight with someone who gave him a ride, would go to motive. The false identity could be given

30

by someone who is avoiding a warrant or does not have legal status in the United States- reasons far removed from a motive to commit aggravated robbery. Nor does the provision of a false name prove opportunity to commit aggravated robbery, as the statement sheds no probative light on whether, for example, the Appellant had access to the crime scene, or possessed special skills or characteristics unique to charged offense. If the opportunity proof is to show that Appellant's false identity is consistent with theft, which is an elemental issue of aggravated robbery, the nexus is too indirect and muddled, so as to confuse the jury.

A false identity statement does nothing to prove an intent to commit aggravated robbery. There is no reasonably direct connection between a false name and the intent to rob someone with a gun. If the extraneous offense had been a prior unauthorized use of vehicle, attempted carjacking, or assault, then the inference of intent could be there, but not in the instant case.

Identity is an issue in the instant case, but only as it involves a witness identification and the circumstances around this identification. Appellant did not provide an alibi defense, nor did Appellant directly raise at trial that the indictment named the wrong defendant, or that the police arrested the

31

incorrectly named individual. As such, identity was not a disputed issue so as to allow the admission of the aforementioned false name statement.

Officer Mendez' false identification testimony unfairly prejudiced the jury to believe that a detained man who gave a false name was trying to hide something, to conceal an important issue. Its probative value of an element of the charged crime, as stated above, is nonexistent, and is greatly outweighed by the seeds planted in the mind of the jury that Appellant is a liar with something to hide. And that impression is harmful error.

CONCLUSION AND PRAYER

The errors identified in this brief require a reversal of the verdict and for the first point of error, a rendering of decision to dismiss this case. For the latter points of error, the case should be remanded for a new trial.

## CERTIFICATE OF SERVICE

I, Robert D. Puente, attorney for the appellant hereby certify that a true and correct copy of the instant brief was delivered to Theodore Hake, Assistant District Attorney, 100 N. Closner, Edinburg Texas, 78573, counsel for the appellee, by hand delivery

the _7th day of April, 2015.


____/s/_____Robert D. Puente___

Robert Puente


## CERTIFICATE OF COMPLIANCE

I, Robert D. Puente, hereby certify that the instant brief contains 4866 words.


_____/s/_____Robert D. Puente_____

Robert D.Puente