**Opinion issued December 19, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00141-CR

————————————

**RODNEY ALLEN RODEFELD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 10th Judicial District Court**
**Galveston County, Texas**
**Trial Court Case No. 18-CR-2428**

---

## MEMORANDUM OPINION

A jury found appellant Rodney Allen Rodefeld guilty of the first-degree

felony offense of possession of a controlled substance, methamphetamine, with

intent to deliver, in an amount of 4 grams or more but less than 200 grams,[1] enhanced with a prior felony, and it assessed his punishment at twenty-five years' confinement. In his sole point of error, appellant contends that he was denied a fair trial due to ineffective assistance of counsel because his trial counsel failed to (1) move to suppress critical incriminatory statements and (2) seek an evidentiary hearing to develop a factual record as to the admissibility of the statements. We affirm.

## Background

On August 6, 2018, Deputy Jacob Manuel with the Galveston County Sheriff's Office and several other officers went to 1413 3rd Avenue North, in Texas City, to execute a felony arrest warrant for Christopher Feigle. When appellant answered the door, Deputy Manuel identified himself and told appellant why he was there and who he was searching for.

Appellant moved a large dog from room to room so the officers could conduct their search for Feigle. The other officers directed the eight occupants of the home into the living room so that Deputy Manuel could identify them and talk to them about the wanted suspect. None of the occupants admitted to any contact with Feigle.

---

[1] *See* TEX. HEALTH & SAFETY CODE § 481.112(a), (d).

Deputy Manuel testified that the occupants were not placed in custody when he entered the house to serve the felony arrest warrant but instead were detained so that he could talk to them about the person he was looking for. Feigle was not found.

Deputy Minis Hunt with the Galveston County Sheriff's Office was one of the officers who entered the residence to begin searching for Feigle. In the course of his search, Deputy Hunt encountered two people in a bedroom on the left side of the house and escorted them to the living room to talk to Deputy Manuel. Appellant, who was holding a dog by a leash, was standing in the kitchen doorway. Deputy Hunt asked appellant to step out of the way so that he could search the back of the house, and appellant complied.

As Deputy Hunt made his way through the kitchen to the back of the house, appellant yelled at his girlfriend, Ashley Wing. When Deputy Hunt opened the back bedroom door, Wing was standing there. Deputy Hunt asked Wing to step out of the room so he could search it. While clearing the bedroom, Deputy Hunt saw a plastic container with a large amount of crystallized substance in an open dresser drawer which he suspected to be methamphetamine. That suspicion was subsequently verified by a field test.

Deputy Hunt called appellant into the bedroom. Deputy Hunt testified that when he showed appellant what he had found, appellant became visibly upset, began crying, and said he did not want to go to jail. When Deputy Hunt called Wing into

the room and asked her if the drugs belonged to her, Wing began crying as well. Appellant then told Deputy Hunt "everything in there was his." After appellant's admission, Deputy Hunt handcuffed him.

Deputy Hunt testified that he did not read appellant or Wing their Miranda[2] rights because he was not conducting a custodial interrogation. When Deputy Hunt asked Wing if there was anything else he needed to know about, appellant told Wing, "[j]ust give it to him." Wing then opened another dresser drawer and handed the deputy eight individual baggies containing a crystallized substance. Before transporting appellant to county jail, Deputy Hunt searched appellant and discovered another baggie containing a crystallized substance tucked inside of his sock. In all, Hunt recovered 4.8 grams of methamphetamine found in appellant's dresser drawer (State's Exhibit #1A), 2.9 grams of crystallized substance found in appellant's sock (State's Exhibit #1B), and eight individual baggies of crystallized substance weighing a total of 4.55 grams found in appellant's second dresser drawer (State's Exhibit #1C).[3]

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

[3] The forensic chemist with the Texas Department of Public Safety testified that she weighed the substances in State's Exhibit #1B and #1C but did not test them because, even if the substances were determined to be methamphetamine, the total aggregate weight of all three substances would not exceed 200 grams. *See* TEX. HEALTH & SAFETY CODE § 481.112(a) ("Except as authorized by this chapter, a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1."); *id.* § 481.112(d) ("An offense under Subsection (a) is a felony of the first degree if

After the State rested, trial counsel moved for a directed verdict based on the drug testing, arguing that the State had failed to meet its burden as to "intent to deliver" because only one of the items submitted was tested. The trial court denied the motion.

Trial counsel called Natalie Steele to testify for the defense. Steele testified that she leased the house at which the officers executed the felony arrest warrant on August 6, 2018. She testified that the house had four bedrooms and several individuals lived at the house and paid rent, including appellant. Steele testified that appellant and Wing lived in the second bedroom where the drugs were found.

During closing arguments, trial counsel argued that appellant's statements to police were unlawful because he had not been read his Miranda rights. Trial counsel also suggested that the officers made a mistake and pointed out that they did not uncover other evidence, such as scales and money, to show that appellant intended to manufacture or deliver drugs, nor did they have a body camera to record appellant's alleged statements. After both sides rested, the jury found appellant guilty of possession with intent to deliver methamphetamine in an amount of 4 grams or more but less than 200 grams.

---

the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, four grams or more but less than 200 grams.").

During the punishment phase of trial, appellant pleaded true to the enhancement paragraph in the indictment alleging that he had been previously convicted of the felony offense of assault family/household member in 2014. The State introduced evidence of appellant's numerous prior misdemeanor and felony convictions, including several drug-related convictions, and several extraneous offenses that were dismissed based on a plea deal as well as three extraneous drug-related charges that were pending at the time of trial.[4]

Appellant testified that he was a paid confidential informant working off some of his cases. He testified that he is an addict and sold drugs to support his habit.

At the conclusion of the punishment phase, the jury sentenced appellant to twenty-five years' confinement. On February 25, 2019, appellate counsel filed a motion for new trial to which she attached an affidavit from appellant's trial counsel, but the motion did not allege a claim of ineffective assistance of counsel.[5] The motion for new trial was overruled by operation of law. This appeal followed.

---

[4] The offenses for which appellant was convicted include possession of stolen goods, possession of a controlled substance, delivery of cocaine, unlawful restraint, terroristic threat, assault family violence, and forgery.

[5] In his motion, appellant claimed that the State had failed to disclose allegedly exculpatory or mitigating evidence to trial counsel.

6

**Ineffective Assistance of Counsel**

In his sole point of error, appellant contends that he was denied a fair trial due to ineffective assistance of counsel because his trial counsel failed to (1) move to suppress critical incriminatory statements and (2) seek an evidentiary hearing to develop a factual record as to the admissibility of the statements.

## A. Standard of Review and Applicable Law

The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the *Strickland* two-step analysis, a defendant must demonstrate that (1) his counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687–88, 694; *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Andrews*, 159 S.W.3d at 101.

An appellant bears the burden of proving by a preponderance of the evidence that his counsel was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "[A]ny allegation of ineffectiveness must be firmly founded in the

record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id*. at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996), *cert. denied*, 519 U.S. 1119 (1997)). However, a reviewing court will rarely be able to fairly evaluate the merits of an ineffective assistance claim on direct appeal because the trial record is usually undeveloped and inadequate to reflect the motives behind trial counsel's actions. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). Trial counsel should have the opportunity to explain his or her actions before being found ineffective. *See Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). When the record is silent, we may not speculate to find trial counsel ineffective. *See Thompson*, 9 S.W.3d at 814.

In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance is within a wide range of reasonable professional assistance and trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006); *Thompson*, 9 S.W.3d at 813. If the reasons for counsel's conduct at trial do not appear in the record and it is possible that the conduct could have been grounded in legitimate trial strategy, an appellate court will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal. *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). To warrant reversal when trial counsel has not been afforded an opportunity to explain

8

his reasons, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533–34 (Tex. Crim. App. 2007) (internal citation omitted). "When handed the task of determining the validity of a defendant's claim of ineffective assistance of counsel, any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Thompson*, 9 S.W.3d at 813 (citing *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)).

## B. Analysis

Appellant contends that there was no objectively reasonable strategy for not moving to suppress his incriminating statements or developing a factual record to permit a factfinder to determine whether he was in custody. Appellant argues that the officer's questions qualified as a custodial interrogation which required the officer to provide appellant with his Miranda warnings before soliciting and obtaining his incriminatory statements.

The record reflects that although appellant filed a motion for new trial, he did not raise a claim of ineffective assistance of counsel. Appellant also did not request a post-conviction hearing regarding counsel's performance. Based on this silent record, appellant has failed to rebut the strong presumption that counsel's decisions were reasonable. *See Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007) (holding that where record is silent as to why counsel made certain decisions,

defendant fails to rebut presumption that counsel's decision was reasonable); *Thompson*, 9 S.W.3d at 814 (concluding that where record is silent as to trial counsel's course of action, defendant does not rebut presumption of reasonableness).

Beyond the lack of a record, appellant must show that if trial counsel had filed a motion to suppress the trial court would have reversibly erred if it had overruled the motion. *See Donald v. State*, 543 S.W.3d 466, 478 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Counsel is not required to engage in the filing of futile motions or to make futile objections. *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991). Rather, to satisfy the *Strickland* test and prevail on an ineffective assistance claim premised on counsel's failure to file a motion to suppress, an appellant must show by a preponderance of the evidence that the result of the proceeding would have been different—i.e., that the motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction. *Jackson v. State*, 973 S.W.2d 954, 956–57 (Tex. Crim. App. 1998).

The United States Constitution prohibits the use of statements made by a criminal defendant against himself if they are obtained through custodial interrogation without the necessary procedural safeguards. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *Jones v. State*, 119 S.W.3d 766, 772 (Tex. Crim. App. 2003). Similarly, the Texas Code of Criminal Procedure precludes the State's use of the

statements of a criminal defendant against himself obtained through a custodial interrogation without compliance with procedural safeguards. *See* TEX. CODE CRIM. PROC. art. 38.22.

However, section 5 of Article 38.22 states that "[n]othing in this article precludes the admission of a statement made by the accused . . . that is the res gestae of the arrest or of the offense . . . ." *Id.* § 5. A statement is res gestae if it is made in response to a startling event, either spontaneously or impulsively, and without time for reflection or contrivance. *State v. Ortiz*, 346 S.W.3d 127, 137 (Tex. App.—Amarillo 2011), *aff'd*, 382 S.W.3d 367 (Tex. Crim. App. 2012); *see also Williamson v. State*, 771 S.W.2d 601, 606 (Tex. App.—Dallas 1989, pet. ref'd). The record must show that "the declarant was excited or emotionally stimulated or in the grip of a shocking event so as to render the statement a spontaneous utterance." *Ortiz*, 346 S.W.3d at 137; *Ward v. State*, 657 S.W.2d 133, 136 (Tex. Crim. App. 1983). Statements may be admissible as res gestae of the arrest even when they are made as a result of custodial interrogation, provided the officer's inquiry is not leading or suggestive of an answer. *Etheridge v. State*, 903 S.W.2d 1, 15 (Tex. Crim. App. 1994), *superceded by statute on other grounds as stated in Diaz v. State*, 110 S.W.3d 181, 184 (Tex. App.—San Antonio 2003, pet. ref'd)).

Here, Officer Hunt testified that when he showed appellant the bag of crystallized substance he had found in an open dresser drawer in appellant's

11

bedroom, appellant became visibly upset, began crying, and asked not to go to jail. When Deputy Hunt asked Wing if the drugs belonged to her, Wing began crying and appellant then told Officer Hunt that "everything in there was his." When Deputy Hunt asked Wing if there was anything else he needed to know about, appellant told Wing, "[j]ust give it to him." Wing then opened another dresser drawer and handed the deputy eight individual baggies containing a crystallized substance.

Based on this testimony, it does not appear that any interrogation of appellant took place as Deputy Hunt was directing his questions to Wing. However, even if Deputy Hunt interrogated appellant, the trial court could nevertheless have determined that appellant's statements were res gestae and, therefore, admissible. Appellant made the statements immediately after he learned that Deputy Hunt had discovered narcotics in his bedroom, began crying, and became visibly upset when he realized that he would be going to jail. *See Galloway v. State*, 778 S.W.2d 110, 112–13 (Tex. App.—Dallas 1989, no writ) (concluding defendant's statement, immediately after being placed under arrest, in which defendant asked for "a break" and admitted making "a mistake" and going out "to get —faced" because of problems with his girlfriend, qualified as either voluntary or "res gestae" statement as defendant made statement immediately and spontaneously, in response to news of his arrest); *see also Brewer v. State*, No. 08-14-00207-CR, 2018 WL 388034, at *3 (Tex. App.—El Paso Jan. 12, 2018, pet. ref'd) (mem. op., not designated for

12

publication) (holding trial court would not have abused its discretion in determining that defendant's threatening statement to officer was res gestae and therefore admissible where evidence showed that defendant became outraged when he realized he was not eligible to be cooperating witness and that information he had provided to police regarding Aryan Brotherhood would be for naught).

Because trial counsel could have surmised that appellant's statements were admissible as res gestae and a motion to suppress would have been futile, we cannot say that his failure to move to suppress the statements or develop a factual record fell below the objective standard of professional norms. *See Hollis v. State*, 219 S.W.3d 446, 463 (Tex. App.—Austin 2007, no pet.) (citing *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004)). Moreover, the record is silent as to trial counsel's reasoning and is insufficient to overcome the presumption that counsel's actions were part of a strategic plan. *Garza*, 213 S.W.3d at 348. Because appellant has failed to meet the first prong of the *Strickland* test, we overrule his point of error. *See Williams*, 301 S.W.3d at 687; *Andrews*, 159 S.W.3d at 101.

## Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice

13

Panel consists of Chief Justice Radack and Justices Lloyd and Kelly.

Do not publish.   TEX. R. APP. P. 47.2(b).