NO. 07-11-00001-CR
 
 IN THE COURT OF APPEALS
 
 FOR THE SEVENTH DISTRICT OF TEXAS
 
 AT AMARILLO
 
 PANEL D
 
--------------------------------------------------------------------------------
JULY 13, 2011
--------------------------------------------------------------------------------

 
 THE STATE OF TEXAS, APPELLANT
 
 v.
 
 OCTAVIO ORTIZ, APPELLEE 
--------------------------------------------------------------------------------

 
 FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;
 
 NO. 2009-423,824; HONORABLE JIM BOB DARNELL, JUDGE
--------------------------------------------------------------------------------

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

 OPINION

 In this interlocutory appeal, the State of Texas challenges the trial court's order suppressing two oral statements of appellee Octavio Ortiz. We will affirm the order of the trial court.
 Background
 The trial court's order was signed after a hearing on the motion to suppress, at which Lubbock County Sheriff's Deputy, Corporal Jason Johnson, was the only witness. At the State's request, the trial court issued findings of fact and conclusions of law. The court's findings include the facts that on May 20, 2009, on U.S. Highway 87 south of Lubbock, Corporal Johnson stopped a 2009 Dodge Avenger driven by appellee Ortiz, for speeding. A camera in Johnson's vehicle recorded the stop and the video-audio recording was admitted in evidence and played for the court at the suppression hearing. 
The court's findings also include the facts that as Ortiz brought the Dodge to a stop, he leaned over the passenger seat, which his wife occupied. The vehicle bore license plates from Chihuahua, Mexico. Ortiz and his wife spoke Spanish to Johnson, although evidence showed, and the trial court found, they understood English. At times during the stop, Johnson spoke to them in Spanish. 
Ortiz told Johnson he lived in Odessa and he and his wife were traveling to Spearman, Texas. However, at other times during the stop he and his wife indicated their destination was Gruver, Texas. Ortiz also told Johnson he was previously arrested for cocaine possession and was on probation in Spearman.
Johnson then spoke with Ortiz's wife. To him, she appeared nervous, breathing rapidly. She told Johnson she had about $1,000 with her and she "guessed" Ortiz had a similar amount. As they spoke Johnson detected a "faint" odor of raw marijuana coming from the vehicle's interior. He requested a background check and called for a backup officer. Moments later he called for a female officer as well. 
At Johnson's request, Ortiz gave permission to search the vehicle and his person. Meanwhile the requested backup officers arrived at the location of the stop. The female officer had Ortiz's wife step from the vehicle and began patting her down. When Ortiz's wife made movements to avoid the pat-down, the male and female officers placed her against the car and the female officer continued the pat-down search. The female officer felt an object attached to the woman's right thigh. She was handcuffed and, according to a finding of the trial court, arrested. At that point, Johnson, who was standing with Ortiz, told him to place his hands behind his back to be handcuffed. Ortiz was not given Miranda warnings. Johnson testified that he placed Ortiz in handcuffs for safety while officers determined what was strapped to his wife's leg. In Johnson's opinion, Ortiz was not then under arrest.
When the backup officer told Johnson that the female officer had found "something" under Ortiz's wife's skirt, Johnson asked Ortiz what kind of drugs his wife had. Ortiz responded "coca" and "cocaina," which the trial court found meant cocaine. At Johnson's instruction, the female officer brought Ortiz's wife to Johnson's vehicle, directly in front of the camera, for removal of the suspected cocaine. As they approached the vehicle Johnson was off camera. He asked how much ("cuantos?") cocaine Ortiz's wife had. She responded "un kilo," which the trial court found meant one kilogram of cocaine. Ortiz also responded to Johnson's question that his wife had one kilo of cocaine. The female officer removed a package of suspected cocaine duct-taped to Ortiz's wife's leg. 
 Ortiz was subsequently indicted for possession of 400 grams or more of cocaine with intent to deliver. He filed a motion to suppress evidence and his statements made during the stop. After the hearing, the trial court granted the motion in part, ordering suppression of Ortiz's two statements, his "coca" or "cocaina" statement identifying the substance as cocaine, and his "un kilo" statement identifying its amount. The State now appeals.
 Analysis
Standard of Review
In reviewing a suppression ruling, we afford almost total deference to the trial court's findings of fact, but review de novo its application of law to those facts. Maxwell v. State, 73 S.W.3d 278, 281 (Tex.Crim.App. 2002). 
First Issue
 By its first issue, the State asserts the suppressed statements were admissible even though Ortiz had not received Miranda warnings before making them because, the State argues, he was then either not in custody or not being interrogated, and even if he were being subjected to custodial interrogation, the statements were admissible as "assertions of fact." We will address each of the arguments in turn.
Was Ortiz in custody on his first statement?
The Standard
The requirements of warning and waiver of rights set forth in Miranda serve to protect the Fifth Amendment right against compelled self-incrimination. Dickerson v. United States, 530 U.S. 428, 440 n.4, 120 S.Ct. 2326, 2334 n.4, 147 L.Ed.2d 405 (2000). The requirement that police advise a person of rights prior to interrogation applies if the person is "in custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 445; 86 S.Ct. at 1612; Stansbury v. California, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528, 128 L.Ed.2d 293 (1994). To determine whether Miranda applies in a particular circumstance, courts apply an objective test to resolve the "ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." J. D. B. v. North Carolina, No. 09-11121, 2011 U.S. Lexis 4557, at *17 (June 16, 2011) (quoting Thompson v. Keohane, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)). The objective circumstances are viewed through the eyes of a reasonable person, thus "[a] person is in `custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." Dowthitt v. State, 931 S.W.2d 244, 254 (Tex.Crim.App. 1996) (citing Stansbury, 511 U.S. 318, 128 L.Ed.2d at 298-99, 114 S.Ct. 1526); accord Herrera v. State, 241 S.W.3d 520, 525 (Tex.Crim.App. 2007). 
The Supreme Court long ago held that persons temporarily detained pursuant to ordinary traffic stops are not "in custody" for Miranda purposes. Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984). At the same time, the Court made clear that a motorist who has been detained pursuant to a traffic stop but whose freedom of action thereafter is curtailed to the degree associated with a formal arrest is entitled to the protections prescribed by Miranda. Id. Unless conveyed to the suspect, the subjective intention of the officer is not relevant to the question of custody; "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Berkemer, 468 U.S. at 442, 104 S.Ct. at 3151.
One of the factors that led the Court to treat the detention that accompanies an ordinary traffic stop like a Terry stop rather than as custodial under Miranda is such a detention of a motorist is "presumptively temporary and brief." Berkemer, 468 U.S. at 437, 104 S.Ct. at 3149. Summarizing the analysis under Miranda applicable to a traffic or investigatory stop that becomes extended or involves police procedures not ordinarily associated with such a temporary detention, Professors Dix and Schmolesky have concluded, "The ultimate question is whether, given all the circumstances, a reasonable person would perceive the detention likely to be long term." George E. Dix and John M. Schmolesky, 41 Texas Practice: Criminal Practice and Procedure § 16.25 (3d ed. 2011) (citing Berkemer, 468 U.S. at 442, 104 S.Ct. at 3152).
Application
The trial court concluded that Ortiz was in custody for Miranda purposes when he was handcuffed. The State agrees Ortiz was in custody by the time he made the second ("un kilo") of the suppressed statements, but argues he was not in custody when he made the first statement ("cocaina"). For the reasons that follow, we see no error in the trial court's conclusion.
We begin by noting that, according to unchallenged findings of fact, the events during which Ortiz made the suppressed statements occurred relatively quickly. The sequence of events from Ortiz's wife being placed under arrest by the female deputy when she felt the object on her leg, and Ortiz's "un kilo" statement, the second statement, all occurred in a minute and twenty seconds. The two suppressed statements themselves were made only thirty seconds apart. The State's analysis thus draws a fine line during relatively fast-moving events, as according to the State a person in Ortiz's circumstances reasonably could have perceived himself as in custody when Johnson asked him the second question but not when he asked the first question thirty seconds before. 
The "reasonable person" standard we apply presupposes an innocent person. Dowthitt, 931 S.W.2d at 254 (citing Florida v. Bostick, 501 U.S. 429, 438, 115 L.Ed.2d. 389, 111 S.Ct. 2382 (1991) (emphasis in original)). But, because the evaluation whether a person is in custody for Miranda purposes includes all the objective circumstances, Stansbury, 511 U.S. at 323, 114 S.Ct. at 1529, it does not presuppose a person oblivious to his situation. The objective circumstances here include those that Ortiz was stopped going 83 miles an hour where the speed limit was 70, and early in the stop made Johnson aware that he had a previous arrest for cocaine and was on probation in another county. 
Shortly after Ortiz was removed from his car, and immediately after Johnson's first conversation with Ortiz's wife, Johnson confronted Ortiz with an accusation they were carrying drugs. He asked Ortiz "how much" drugs were in the car. In response, the court found, Ortiz "backed away and said, `No.'" After that exchange, Johnson further questioned Ortiz about his destination and his purpose for traveling there, then called for the backup officer and then a female officer. Johnson then asked Ortiz for consent to search his person and the vehicle. Shortly after the backup and female officers had arrived, the female officer began the pat-down of Ortiz's wife, "felt an object" on her right thigh, and arrested her. Those officers then "called out" something to Johnson, who then handcuffed Ortiz. Johnson gave Ortiz no reason for placing him in handcuffs. The backup officer walked back over to Ortiz and Johnson, telling him the female officer had found "something" under Ortiz's wife's skirt. 
Johnson testified he handcuffed Ortiz for officer safety. The trial court's findings include the fact Johnson placed Ortiz in handcuffs while his wife was resisting the pat-down. In arguing that Ortiz then was detained but not arrested, the State's brief contains the statement, "Whether a seizure is an actual arrest or an investigative detention depends on the reasonableness of the intrusion under all the facts." While accurate as a proposition of Fourth Amendment law, for purposes of our present inquiry the statement misses the mark. As we have noted, the requirements of Miranda arise from Fifth Amendment protections. Dickerson, 530 U.S. at 440 n.4, 120 S.Ct. at 2334 n.4. Hence the determination whether handcuffing Ortiz placed him in custody for Miranda purposes does not turn on the reasonableness, under the Fourth Amendment, of Johnson's decision to handcuff him for officer safety. The two inquiries are related but they are not the same. See United States v. Newton, 369 F.3d 659, 675 (2d Cir. 2004) (concern under Miranda "is not with the facts known to the law enforcement officers or the objective reasonableness of their actions in light of those facts. Miranda's focus is on the facts known to the seized suspect and whether a reasonable person would have understood that his situation was comparable to a formal arrest"); Dowthitt, 931 S.W.2d at 254 (person is in custody if, under circumstances, reasonable person would believe he is restrained to degree associated with formal arrest). See also United States v. Revels, 510 F.3d 1269, 1274 (10th Cir. 2007) (similarly distinguishing between Fourth Amendment analysis focusing on reasonableness of police actions and Miranda custody analysis). 
A conclusion Ortiz was in custody under Miranda when he was handcuffed means neither that he actually was under arrest nor that Johnson's stated concerns for officer safety were unreasonable, under a Fourth Amendment analysis. See Newton, 369 F.3d at 677 (finding handcuffing suspect was reasonable to investigatory purpose under Fourth Amendment but placed him in custody under Miranda); United States v. Martinez, 462 F.3d 903, 908-09 (8th Cir. 2006) (noting whether handcuffing placed defendant in custody is "separate question" from whether handcuffing constituted arrest and finding defendant in custody during questioning although still only detained for Fourth Amendment purposes); People v. Holt, 233 P.3d 1194, 1198 n.3 (Colo. 2010) ("In determining that the officers used a degree of force traditionally associated with custody and arrest, we do not conclude or imply that the officers acted unreasonably. Entering the apartment with weapons drawn and handcuffing [the suspect] may have been reasonable or even necessary for officer-safety purposes, but that does not alter our custody inquiry, which focuses on how the officers' actions would have reasonably affected the suspect's perception of his own freedom"). 
By the time Ortiz was placed in handcuffs, in light of the surrounding circumstances, a reasonable person would have understood that his detention was no longer likely to be "temporary and brief," but "long term." Berkemer, 468 U.S. at 437, 104 S.Ct. at 3149; Dix and Schmolesky, § 16.25, at 44. Under the circumstances reflected in its findings, we agree with the trial court that, by that time a reasonable person in Ortiz's situation would believe that his freedom of movement was restrained to the degree associated with a formal arrest. See Herrera, 241 S.W.3d at 525. He was in custody for the purpose of the Miranda warnings.
 Were the two statements the product of interrogation?
The State further contends even if in custody Ortiz was not being interrogated when he made the two statements because the question prompting the first statement was "a general or routine question" and the question prompting the second statement was posed to Ortiz's wife and not Ortiz.
 Once Ortiz was in custody, interrogation could not occur until he was provided his Miranda rights. Miranda, 384 U.S. at 444, 86 S.Ct. at 1612. "Interrogation," under Miranda, refers to express questioning as well as words or actions by the police, other than those normally attendant to arrest and custody, that police "should know are reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). The term "incriminating response" refers to any response that the prosecution may seek to introduce at trial. Innis, 446 U.S. at 302 n.5; 100 S.Ct. at 1689 n.5. See, e.g., Ramirez v. State, 105 S.W.3d 730, 741 (Tex.App.--Austin 2003, no pet.) (officer found contraband during search of suspect's garage and asked suspect "Is there anything else I'm going to find in there that's illegal, any more marihuana?"; question was interrogation).
 Concerning the first statement, at the suppression hearing Johnson testified that he asked Ortiz, "What kind of drugs does [Ortiz's wife] have [?]" Not all post-arrest questioning constitutes an interrogation. Jones v. State, 795 S.W.2d 171, 174 (Tex.Crim.App. 1990). For example, routine inquiries, questions incident to booking, broad general questions such as "what happened?" on arrival at the scene of a crime, and questions mandated by public safety concerns are not interrogation. Id. at 174 n.3. We conclude Johnson's question does not fall within the category of general or routine questions incident to an arrest. Rather, it specifically addressed the officers' discovery of the item strapped to the leg of Ortiz's wife as she was searched in the presence of Ortiz and Johnson. Johnson's question to Ortiz asking the "kind of drugs" his wife had was practically certain to elicit an incriminating response. Cf. Camacho v. State, No. 08-05-0089-CR, 2006 Tex. App. Lexis 5338, at *12 (Tex.App.--El Paso June 22, 2006, no pet.) (not designated for publication) (when officers found narcotics in vehicle driven by suspect, subsequent inquiry asking suspect "if he had any other narcotics on his person" was interrogation within the meaning of Miranda). 
 As for the second statement, the State argues it was not the result of interrogation of Ortiz because Johnson's question "cuantos?" ("how much?") was not addressed to Ortiz but to his wife. The argument depends on resolution of that fact issue: to whom Johnson's question was directed. The trial court addressed the issue in its findings of fact and conclusions of law. The court's conclusions of law contain a conclusion stating, "[Ortiz's] statement that the amount of cocaine found on [his wife's] person was a quantity of one kilo was made in response to a question by Deputy Johnson to him."
The designation placed on a finding of fact or conclusion of law by a trial court is not controlling on a reviewing court. State v. May, 242 S.W.3d 61, 64 n.1 (Tex.App.--San Antonio 2007, no pet.); Ray v. Farmers' State Bank, 576 S.W.2d 607, 608 n.1 (Tex. 1979). The trial court's conclusion of law that Ortiz made the "un kilo" statement in response to a question to him is nothing more than a finding of historical fact. As a finding of fact, if supported by the record, it is entitled to almost total deference on appeal. Ross v. State, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000). 
The State argues, however, that the court's statement, whether finding or conclusion, is not supported by the record. The video does not resolve the issue; Johnson and Ortiz are outside the camera's view during the question and response. To the State, Johnson's testimony at the suppression hearing makes clear that he directed his question to Ortiz's wife. We do not agree that his testimony gives a clear answer. In fact, as recorded by the court reporter, Johnson's testimony regarding his "cuantos" question makes little sense. Based on the record before us, we will defer to the trial court's express finding that Ortiz's "un kilo" statement was in response to a question directed to him.
Like the question precipitating Ortiz's first statement, the question of the quantity of the cocaine was not a general question but one certain to elicit an incriminating response. We agree with the trial court that Ortiz was subject to interrogation, for purposes of Miranda, when he made the two statements. 
 Were the two statements nevertheless admissible under article 38.22 § 3(c)?
The State further argues, however, that even were we to find Ortiz was in custody when he made the two statements, the requirements of Article 38.22 § 3(a) did not attach because the statements are admissible as "assertions of fact." Tex. Code Crim. Proc. Ann. art. 38.22 § 3(c) (West 2005). Generally, an oral confession is inadmissible unless made in compliance with article 38.22 § 3(a). Moore v. State, 999 S.W.2d 385, 400 (Tex.Crim.App. 1999). However, to this rule § 3(c) provides an exception. "Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed." Tex. Code Crim. Proc. Ann. art. 38.22 § 3(c) (West 2005). Under this exception, "oral statements asserting facts or circumstances establishing the guilt of the accused are admissible if, at the time they were made, they contained assertions unknown by law enforcement but later corroborated." Woods v. State, 152 S.W.3d 105, 117 (Tex.Crim.App. 2004). 
The State appears to assume that statements admissible under § 3(c) are exempt from the requirements of Miranda. That is, an oral statement obtained during custodial interrogation, meeting the exception of § 3(c) would be admissible, even if not preceded by the Miranda warnings. For the proposition, the State cites no authority and we can envision none since such a rule would engraft an additional, unrecognized exception onto Miranda. See Dix & Schmolesky, §§ 16.134-16.137 (discussing Miranda exceptions for preserving "public safety," "undercover investigations," and "routine and noninvestigatory questioning"). We think it fundamental that statements admissible under § 3(c) are not exempt from the requirements of Miranda. See Perillo v. State, 758 S.W.2d 567, 575 (Tex.Crim.App. 1988) (stating "that Miranda warnings must precede a confession offered under Article 38.22, § 3(c)"); Watson v. State, 762 S.W.2d 591, 594 n.3 (Tex.Crim.App. 1988) (noting oral statements in issue, if admissible, were admissible under article 38.22 § 3(c) and must have been preceded by Miranda warnings); Moore v. State, 505 S.W.2d 887 (Tex.Crim.App. 1974); Herron v. State, 485 S.W.2d 558 (Tex.Crim.App. 1972). See generally Port v. State, 791 S.W.2d 103, 105 (Tex.Crim.App. 1990) (defendant's oral statement which came within § 3(c) was preceded by Miranda warnings which accused said he understood); Almanza v. State, 839 S.W.2d 817, 818 (Tex.Crim.App. 1992) (Miranda warnings preceded questioning but statement did not come within § 3(c) exception to article 38.22). Here, it matters not whether the two statements might come within the exception of article 38.22 § 3(c) because prior to their utterance Ortiz did not receive the Miranda warnings.
 Like the trial court, we conclude the two statements were the product of custodial interrogation occurring prior to receipt of the Miranda warnings. The statements were properly suppressed for this reason. We further conclude this result is not altered, even assuming the statements were within the exception to article 38.22 § 3(c). We overrule the State's first issue. 
The Second Issue
 In its second issue, the State asserts that even if Ortiz was in custody and subject to interrogation at the time he made the two statements, the statements are nevertheless admissible under the res gestae exception provided by article 38.22 § 5. That section provides in part that nothing in article 38.22 precludes the admission "of a statement that is the res gestae of the arrest or of the offense." See Tex. Code Crim. Proc. Ann. art. 38.22 § 5 (West 2005). A statement is res gestae if "made in response to a startling event, spontaneously or impulsively, without time for reflection or contrivance, and such a statement can be made in response to an inquiry." Williamson v. State, 771 S.W.2d 601, 606 (Tex.App.--Dallas 1989, pet. refused). Statements may be admissible as res gestae of the arrest even if they resulted from custodial interrogation. Etheridge v. State, 903 S.W.2d 1, 15 (Tex.Crim.App. 1994). The record must show that "the declarant was excited or emotionally stimulated or in the grip of a shocking event so as to render the statement a spontaneous utterance." Ward v. State, 657 S.W.2d 133, 136 (Tex.Crim.App. 1983) (citing Scott v. State, 564 S.W.2d 759 (Tex.Crim.App. 1978); Smith v. State, 514 S.W.2d 749 (Tex.Crim.App. 1974); Graham v. State, 486 S.W.2d 92 (Tex.Crim.App. 1972)). 
When determining whether a statement is admissible as res gestae, the first concern is whether Miranda requires its exclusion. Smith v. State, 507 S.W.2d 779, 781 (Tex.Crim.App. 1974). As we have already determined, the two statements were the product of custodial interrogation preceding the Miranda warnings; thus, they are excluded on constitutional grounds. Whether the statements might otherwise amount to res gestae of the arrest or the offense is irrelevant. Id. See also Pilcher v. Estelle, 528 F.2d 623, 624-25 (5th Cir. 1976) (per curiam) (Miranda protections not subordinate to Texas res gestae rule). We overrule the State's second issue.
 Conclusion
Having overruled the State's two issues on appeal, we affirm the order of the trial court suppressing the two statements of Ortiz.

 James T. Campbell
 Justice
Publish.