CONCURRING OPINION
Ralph K. Burgess, Justice
I agree with the majority’s conclusion that Bates’ conviction and sentence should *277 be affirmed and that any error in admitting his statements was harmless. Because the State asserts Bartlett v. State as authority for its position that Bates was not in custody at the time he made the statements in question, I am writing to more fully explain why I believe that the statement “a valid investigative' detention, which is characterized by lesser restraint than an arrest, does not constitute custody” goes too far in this case. Bartlett v. State, 249 S.W.3d 658, 668 (Tex.App.— Austin 2008, pet. ref'd).
I. Introduction
My disagreement with this statement from Bartlett arises from the intermingling of the law involving investigative detention, as contemplated by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),[24] with the concept of custody, as contemplated by Miranda. To some extent, the intermingling is a result of terminology. As explained below, the term “investigative detention” invokes the Fourth Amendment prohibition against unreasonable search and seizure, while Miranda deals with the Fifth Amendment privilege against self-incrimination. Often, courts deciding the issue of whether Miranda warnings were required in a particular circumstance have spoken in terms of whether incriminating statements were the product of “investigative detention” or custodial interrogation.[25] Since Miranda only involves the question of whether an incriminating statement was made as a result of non-custodial or custodial interrogation, the use of the term “investigative detention” in this concurrence refers only to how the term is understood in the Fourth Amendment context.[26]
*278 To explain why the statement in Bartlett —that “a valid investigative detention, which is characterized by lesser restraint than an arrest, does not constitute custody” — goes too far, it is necessary to review the definition of “custody” under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny. In California v. Beheler, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), the Supreme Court stated,
Although the circumstances of each case must certainly influence a determination of whether a suspect is “in custody” for purposes of receiving of Miranda protection, the ultimate inquiry is simply whether there is a “formal arrest or restraint on freedom of movement” of the degree associated with a formal arrest.
Id. at 1125, 103 S.Ct. 3517. According to this definition, there are two types of custody under Miranda, “formal arrest custody” and “restraint on freedom of movement custody,” or “restraint custody,” for short. No controversy exists regarding the interplay between formal arrest custody under Miranda and “investigative detentions” under Terry; a person is clearly in custody under Miranda when he has been formally arrested under the Fourth Amendment. Yet, the interplay between investigative detention and restraint custody is more problematic.
Two competing perspectives have arisen among courts regarding the relationship between restraint custody under Miranda and investigative detention under Terry. Courts adhering to the first perspective believe Miranda restraint custody exists somewhere between investigative detention and formal arrest on the same continuum as Fourth Amendment seizures. Under this view, which considers investigative detention, custody, and formal arrest as representing different degrees of restraint, courts find that restraint custody under Miranda and investigative detention under Terry cannot occur at the same time.[27] Courts adhering to the second perspective believe that seizure under the Fourth Amendment and custody under Miranda are not on the same continuum, but are separate concepts which typically, though not always, overlap.[28] Under this perspee- *279 tive a person can be in custody during an investigative detention.[29]
 id="b295-5">Bartlett adhered to the first perspective. In Bartlett, when the court of appeals stated that “a valid investigative detention ... does not constitute custody,” then logically, it concluded that one cannot be in custody during an investigative detention. Because a person under formal arrest is in custody, and because an investigative detention is not a formal arrest, then formal arrest custody and investigative detention are mutually exclusive. To the extent this statement from Bartlett is limited to formal airest custody, I have no disagreement. Yet, the State offers Bartlett as authority for the conclusion that one cannot be in restraint custody during an investigative detention. For the reasons set forth below, I believe that one can be in restraint custody during an investigative detention. Therefore, I believe the statement in Bartlett, because it is not expressly limited to formal arrest custody, goes too far for application to the present case.[30]
II. Berkemer v. McCarty and the Effect of Permitting Increased Restraint During Investigative Detention on the Custody/Investigative Detention Analysis
As noted by the majority, the court of appeals in Bartlett relied on Berkemer v. *280 McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed,2d 317 (1984), as authority for its conclusion that “a valid investigative detention ... does not constitute custody.” Bartlett, 249 S.W.3d at 668. In that case, an Ohio state trooper stopped Berkemer after observing his car weaving in and out of the traffic lanes and subsequently arrested him for driving while under the influence after he failed a field-sobriety test. Id. at 423, 104 S.Ct. 3138. Berkemer made incriminating statements both on the roadside prior to his arrest and then again at the jail. Id. Yet, he was never administered the Miranda warnings at either location. Id. at 424, 104 S.Ct. 3138. The Supreme Court first 'noted that “[t]here can be no question that [Berkemer] was ‘in custody’ at least as of the moment he was formally placed under arrest and instructed to get into the police car.” Id. at 434, 104 S.Ct. 3138. The Court then held. that.because the roadside stop was similar to the brief investigative detention authorized by Terry, Berkemer was not in custody for purposes of Miranda until he was formally arrested. Id. at 442, 104 S.Ct. 3138. Accordingly, the Supreme Court held that Berkemer’s statements made during the roadside stop were admissible, but his statements made at the police station were not. Id.
'Thus, Berkemer clearly demonstrated that formal arrest under the Fourth Amendment and formal arrest custody under Miranda are the same, but in explaining why Berkemer’s roadside statements were admissible, the Supreme Court seemed to draw a bright line distinction between Terry stops and Miranda custody.
[T]he usual traffic stop is more analogous to a so-called “Terry stop” than to a formal arrest.... The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not “in custody” for the purposes of Miranda.
Id. at 439-40, 104 S.Ct. 3138 (citations omitted). The Supreme Court went on to say,
No more is implied by this analogy than that most traffic stops resemble, in duration and atmosphere, the kind of brief detention authorized in Terry. We of course do not suggest that a traffic stop supported by probable cause may not exceed the bounds set by the Fourth Amendment on the scope of a Terry stop.
Id. at 439, 104 S.Ct. 3138 n. 29. Finally, the Supreme Court noted, “If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him % custody" for practical purposes, he will be entitled to the full panoply of protections provided by Miranda.” Id. at 440, 104 S.Ct. 3138. Consequently, the Supreme Court seemed to hold that custody and investigative detention are on the same continuum so that a person cannot be under investigative detention as defined by Terry and in custody under Miranda at the same time.[31]
*281 Yet, because the roadside detention in Berkemer was not very intrusive, it does not appear that restraint custody under Miranda was ever considered. Moreover, the degree of restraint permitted in Terry stops has- increased significantly since Ber-kemer was decided. As noted by the United States Court of Appeals for the Tenth Circuit,
The last decade, however, has witnessed a multifaceted expansion of Terry. Important for our purposes is the trend granting officers greater latitude in using force in order to ‘neutralize’ potentially dangerous suspects during an investigatory detention.... Thus, today, consonant-with this trend, we held that police officers acted reasonably under the Fourth Amendment when they, without probable cause and with guns drawn, stopped Mr. Perdue’s car, forced him to get out of his car, and demanded that he lie face down on the ground.
Perdue, 8 F.3d at 1464.[32] Consequently, Berkemer did not resolve the issue of whether there could be an investigative detention so intrusive that it significantly restrained a person’s “ ‘freedom of movement’ of the degree associated with formal arrest” such' that it would constitute restraint custody and investigative detention at the same time.
III. Factors Supporting a Separate Analysis of Custody and Investigative Detentions
If restraint custody and investigative detention are on the same continuum and, therefore, mutually exclusive, and if an investigative detention is not a formal arrest requiring probable cause, then logically, as the scope of permissible intrusiveness under Terry increases, the scope of restraint custody under Miranda must decrease. On the other hand, if restraint *282 custody and investigative detentions are separate states of existence that typically overlap, then permissible restraint under Terry can expand to the edge of formal arrest, yet leave room for restraint custody to co-exist. There are three reasons why the second conclusion should prevail over the first.
A. The Miranda Warnings Requirement and the Terry Investigative Detention Exception Were Adopted to Accomplish Different Goals
First, the determination of whether a seizure is an investigative detention under Terry■ rather than an arrest under the Fourth Amendment, and the determina^ tion of whether a person is in restraint custody for purposes of Miranda, are clearly separate analyses with clearly separate goals. The “inquiry into the circumstances of temporary detention for a Fifth and Sixth Amendment Miranda analysis requires a different focus than that for a Fourth Amendment Terry stop.... The purpose of permitting a temporary detention without probable cause ór a warrant is to protect police officers and the general public. United States v. Smith, 3 F.3d 1088, 1096, 1097 (7th Cir.1993). By contrast, “the basis for [the Miranida] decision was the need to protect the fairness of the trial....” Schneckloth v. Bustamonte, 412 U.S. 218, 240-41, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In Sehneckloth, the Supreme Court went on to say,
There is a vast difference, between those rights that protect a fair criminal trial and the rights guaranteed by the Fourth Amendment....
[[Image here]]
The Fourth Amendment “is not an adjunct to the ascertainment of truth.” The guarantees of the Fourth Amendment ■ stand “as a protection of quite different constitutional values — values reflecting the concern of our society for the right of each individual to be let alone.” ...
[[Image here]]
.... The considerations that informed the Court’s holding in Miranda are simply inapplicable to the present case.
Id. at 241-42, 246, 93 S.Ct. 2041. Accordingly, as more sophisticated weapons are developed, and particularly in the age of terrorism, it stands to reason that officer and public safety would spur increasing restraint in investigative detentions. By contrast, to suggest that less fairness or truth would ever be acceptable in a trial or proceedings leading to trial would be absurd.
B. The Differences Between the Exceptions to the Fourth And Fifth Amendments Were Based on a Balance of Competing Interests by the Constitution’s Framers, and Reviewing the Concepts Together Would Upset that Balance
Second, even though the privacy interests protected by the Fourth and Fifth Amendments overlap, the exceptions to their protections are significantly different and inapplicable to each other. Fisher v. United States, 425 U.S. 391, 400, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). For instance, although a grant of immunity by the State will overcome the Fifth Amendment privilege, immunity will not overcome the Fourth Amendment right against unreasonable and warrantless searches and seizures. Id. On the other hand, the Fourth Amendment right may be overcome by a warrant, probable cause,' or reasonableness, whereas the Fifth Amendment privilege cannot. Id. Essentially, under the Fourth Amendment, the State may have both the evidence and the prosecution, but under the Fifth Amendment, the State must choose between having the testimony *283 and having the prosecution.[33] The Supreme Court noted that these distinctions were not incidental, but were carefully crafted into the Bill of Rights by the Constitution’s framers:
They struck a balance so that when the State’s reason to believe incriminating evidence will be found becomes sufficiently great, the invasion of privacy becomes justified and a warrant to search and seize will issue. They did not seek in still another Amendment[ — ]the Fifth[ — ]to achieve a general protection of privacy but to deal with the more specific issue of compelled self-incrimination.
Id. Therefore, logic dictates that under Fisher, any attempt to engraft the Fourth Amendment exceptions onto the Fifth Amendment right against self-incrimination would be unconstitutional.
As noted previously, it is easy to contemplate situations where an investigative detention might require significant restraint on freedom of movement that would be reasonable under the circumstances, and therefore, permissible under the Fourth Amendment. As also noted, no such balancing process was included with respect to the Fifth Amendment right against self-incrimination. Yet, if restraint custody and investigative detention are mutually exclusive, then expanding fhe definition of investigative detention under Terry, would necessarily contract the definition of restraint custody under Miranda. If the expansion of Terry is justified by reasonableness, then the corresponding contraction of Miranda is also a product of reasonableness. Yet, reasonableness is not an exception to the Fifth Amendment and Miranda. Thus, contracting Miranda’s definition of restraint custody in order to accommodate expansion- of investigative detention under Terry would effectively allow Fourth - Amendment reasonableness to invade into the Fifth Amendment’s restraint custody analysis.
C. The Supreme Court Contemplated that Terry ⅛ Investigative Detention Exception Might Expand, but it Intended Miranda ⅛ Requirements to Remain Constant
Finally, language from the Supreme Court’s opinions themselves supports the conclusion that - expansion of permissible restraint used in Terry investigative detentions would be allowed, whereas the definition of restraint custody under Miranda would remain constant. In Terry, the Supreme Court expressly left it to later cases and courts to identify the boundaries of permissible restraint in investigative detentions.
We need not develop at length in this case ... the limitations which the Fourth Amendment places upon a protective seizure and search for weapons. These limitations will have to be developed in the concrete factual circumstances of individual cases.... The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined - in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.
Terry, 392 U.S. at 29, 88 S.Ct. 1868 (citations omitted). By contrast, the Supreme Court has ruled that “‘[fidelity to the doctrine announced in Miranda requires that it be enforced strictly, but only in *284 those types of situations-in which the concerns that powered the [Miranda] decision’” are clearly present. Howes, 132 S.Ct. at 1192 (quoting Berkemer, 468 U.S. at 437, 104 S.Ct. 3138). Accordingly, the ceiling above permissible restraint in an investigative detention has been raised, but the floor beneath restraint custody under Miranda has not moved with it. Not surprisingly, as the investigative detention ceiling rises, situations have arisen where the restraint used in an investigative detention becomes so great that what may have started as a non-custodial encounter becomes restraint custody under Miranda. This is exactly what the Court observed in United States v. Perdue:
One cannot ignore the conclusion, however, that by employing an amount of force' that reached the boundary line between a permissible Terry stop and an unconstitutional arrest, the officers created the “custodial” situation envisioned by Miranda and its progeny.
Perdue, 8 F.3d at 1464.
IY. Texas Cases Considering This Issue
The Court of Criminal Appeals does not appear to have addressed this issue specifically. In Dowthitt v. State, the. court held that there are •
at least four general situations which may constitute custody: (1) when the suspect; is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. Concerning the first through third situations, [Stansbury v. California, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)] indicates the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention.
Dowthitt v. State, 931 S.W.2d 244, 255 (Tex.Crim.App.1996) (citation omitted). On first glance, this language suggests that the Court views custody on the same continuum as investigative detentions, yet, neither Dowthitt nor Stansbury involved a Fourth Amendment issue, and, as in Ber-kemer, it does not appear the Court considered restraint custody during the course of an investigative detention. Moreover, Dowthitt was decided prior to the escalation of restraint in investigative detentions observed by the Tenth Circuit Court of Appeals in Perdue.
In State v. Ortiz, the Tenth Court of Appeals clearly considered the issues separately, holding that the determination of “whether handcuffing [the defendant] placed him in custody for Miranda purposes does not turn on the reasonableness, under the Fourth Amendment, of [the officer’s] decision to handcuff him for officer safety. The two inquiries are related but they are not the same.” State v. Ortiz, 346 S.W.3d 127, 133 (Tex.App.—Amarillo 2011), aff'd, 382 S.W.3d 367, 374 (Tex.Crim.App.2012). The Court of Appeals went on to say that “[a] conclusion Ortiz was in custody Under Miranda when he was handcuffed means neither that he actually was under arrest nor that Johnson’s stated concerns for officer safety were unreasonable, under a Fourth Amendment analysis.” Id. The Court of Criminal Appeals affirmed the lower court’s decision, noting
A normal traffic stop is a non-custodial detention because it is brief and relatively non-coercive. In holding that a traffic stop is generally less coercive than a *285 custodial detention, the Berkemer Court observed that, during a traffic stop, a detainee is typically “only confronted by one or at the most two policemen[, which] further mutes his sense of vulnerability.” By the time he made the cocaine statements in this case, however, the appellee’s detention had escalated into something inherently more coercive than a typical traffic stop.... While this is hardly an overwhelming show of force, it adds at least marginally to the court of appeals’ [ ] conclusion that the appellee was in custody for Miranda purposes at that time. '
Ortiz, 382 S.W.3d at 374 (citations omitted). Nevertheless, the Court of Criminal Appeals did not specifically adopt the lower court’s reasoning that investigative detentions and custody are separate analyses even though it affirmed the lower court’s ultimate conclusion. Yet, its reasoning that Ortiz’ original “typical traffic stop” had escalated into an “inherently more coercive” “[investigative] detention” that constituted Miranda custody is not inconsistent with the lower court’s reasoning.
Subsequently, in Estrada v. State, No. PD-0106-13, 2014 WL 969221 (Tex.Crim. App. Mar. 12, 2014) (not designated for publication),[34] the Court of Criminal Appeals distinguished Órtiz and held, in an unpublished opinion, that the defendant was not in custody during the course of a traffic stop.
In , the end, Estrada can identify only one circumstance that might lead a reasonable person to consider himself in custody for Miranda purposes: the fact that Officer Rodriguez asked Estrada and her passenger whom the drugs belonged to. Every other factor identified by this Court and the court of appeals— that Estrada was not handcuffed; that she was not subjected to a pat-down; that the “ordinary” number of police vehicles and officers were present during .her detention; -that she was not informed that she was.not free to leave; and that she was not separated from her passenger and interrogated individually — indicate that the stop was a simple investigative detention and never rose to the level where a reasonable person would consider himself in custody.[35]
Id. at *5. More, importantly, the Court of Criminal Appeals rejected Estrada’s argument that “ ‘[according to Berkemer, at the time Officer Rodriguez posed his question to Ms. Estrada, this encounter was no longer an investigative detention’ because the only purpose of his question was to obtain an incriminating response.” Id. The court held,
Berkemer does not stand for such a proposition. In Berkemer, the Court indicated that a non-custodial, investigative detention will typically involve “a moderate number of questions to determine his identity and to try to obtain information , confirming or dispelling the officer’s ■ suspicions,” This statement does not limit questions asked during an investigative detention to non-incriminating ones. The fact that an officer is authorized to ask questions for the purpose of confirming or dispelling his suspicions assumes that such questions *286 could be potentially incriminating. Ultimately, the Supreme Court in Berlcemer stated that a determination of custody turns on whether a detainee’s freedom is curtailed to- a degree associated with formal arrest, the test this Court and the court of appeals have applied to this case.
Id. (citations omitted). The Court of Criminal Appeals once again focused the issue on the amount of restraint involved, not on whether the existence of an investigative detention rendered custody impossible. .
Given its prior holding in Sheppard that “a Fourth Amendment Terry detention is not a custodial arrest, and the use of handcuffs does not automatically convert a temporary detention into a Fourth Amendment arrest,” the Court’s reasoning in Ortiz suggests that the Court would conclude that custody and seizure are separate analyses in an appropriate case. Sheppard, 271 S.W.3d at 289 n. 28. On the other hand, one reading of D'owthitt and Estrada might suggest that the Court considers them on the same continuum. Yet, despite the use of the term “investigative detention” in Dowthitt and Estrada, nothing suggests that the Court considers a Fourth Amendment Terry detention on the same continuum as Fifth Amendment custody. In any event, the issue does not appear to have been conclusively clarified by the Court of Criminal Appeals.
V. Application to the Present Case
In the present case, it is clear that Bates was in custody when he was handcuffed and placed into the back seat of the patrol car. The fact that he was not formally arrested until approximately eleven minutes later does not change the fact that he was in custody because he was under “ ‘restraint on freedom of movement’ of the degree associated with a formal arrest.’ ” Beheler, 463 U.S. at 1125, 103 S.Ct. 3517. Yet, as demonstrated above, it is also possible he was being held in an investigative detention until formally arrested, and the State is not without support from the record to make that argument. Although a witness said Bates “tried to kill that man,” viewing the scene objectively at the time the officers arrived, the position of Bates’ vehicle was just as consistent with an accident or mechanical failure as it was with an intentional act. Only after obtaining more information were the officers able to develop probable cause to arrest him for aggravated assault with a deadly weapon. Likewise, the presence of the shirtless man, his agitated state, and his statements that the officers better “[g]et him” because he was “gonna do something stupid” would have justified the officers placing Bates in handcuffs and securing him in the patrol car in order to prevent the situation from escalating into further violence until they could obtain more information. And Bartlett supports the State’s argument that Bates was merely being detained, at least when he was initially handcuffed and placed in the patrol car. Nevertheless, even if the State was correct in asserting that Bates was merely being detained under Terry, it does not require a finding that he was not also in custody under Miranda.
Consequently, the Court of Appeals’ statement in Bartlett is correct insofar as it addresses formal arrest custody. Because formal arrest custody and formal arrest are the same, and because an investigative detention is not formal arrest, then “a valid investigative detention, which is characterized by lesser restraint than an arrest, does not constitute [formal arrest] custody.” Bartlett, 249 S.W.3d at 668. Yet, as has been shown above, the statement goes too far if applied to restraint custody. For these reasons, the State’s reliance on Bartlett is misplaced. Because *287 Bates was in restraint custody, Miranda warnings were required, and in the absence of warnings, the statements were inadmissible. Nevertheless, for the reasons noted by the majority, any error in admitting those statements was harmless.

. Although the phrase "investigative deten- . tion” is not found in the Terry opinion, it has evolved into a phrase synonymous with Terry stops. See generally United States v. Sharpe, 470 U.S. 675, 718, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (Brennan, J., dissenting), where the phrases "Terry encounters,” "Terry stops,” and' "investigative detentions” are used interchangeably to describe the same event.

. In Dowthitt, the Texas Court of Criminal Appeals wrote, "We have outlined at least four general situation's which may constitute custody_ Concerning the first through third situations, [Stansbury v. California, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994),] indicates that the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention.” Dowthitt v. State, 931 S.W.2d 244, 255 (Tex.Crim.App.1996). Citing to this language, several court have intermingled Terry with Miranda and have concluded that an investigative detention is not custody. Ramirez v. State, 105 S.W.3d 730, 738-39 (Tex.App.—Austin 2003, no pet.); Loris v. State, Nos. 02-11-00464-CR, 02-11-00465-CR, 02-11-00466-CR, 2013 WL 3968079, at *3 n. 4 (Tex.App.—Fort Worth Aug. 1, 2013, pet. ref’d) (mem. op., not designated for publication); Caballero v. State, No, 05-11-00367-CR, 2012 WL 6035259, at *4 (Tex.App.—Dallas Dec. 5, 2012, pet. ref'd) (mem. op., not designated for publication); Gonzalez v. State, No. 10-04-00164-CR, 2005 WL 1836939, at *2-3 (Tex.App.—Waco Aug. 3, 2005, pet. ref’d) (mem. op., not designated for publication); see Ard v. State, 418 S.W.3d 256, 262 (Tex.App.—Houston [14th Dist.] 2013, no pet.). Certainly, a-Terry investigative detention can involve increasing 'restraint that leads to a person being in custody, but the investigative detention does not become custody. However, becáuse neither Dowthitt nór Stansbury involved a Fourth'Amendment issue, the term "investigative detention,” as used in Dowthitt, did not have the same meaning as a Terry investigative detention.

. By using the 'terms "investigative detention” and "custody” to mark the two ends of the Fifth ■ Amendment custody scale, courts effectively merge the two concepts when they should remain separate. As will be explained more fully, below, the unintended consequence of this merger is that it allows the expansion of Terry to impermissibly encroach upon the protections of Miranda. A more accurate description would be to .delineate between non-custodial encounters and custody under the Fifth Amendment and between investigative detentions and arrests under the *278 Fourth Amendment. Nevertheless, the cases which frame the issue as a distinction between investigative detentions and custody are legion. Thus, to discuss the issue here, it is necessary to use that investigative detention/custody framework. Nevertheless, the use of the term investigative detention when discussing the Fifth Amendment should be interpreted as a non-custodial encounter under Miranda rather than a Fourth Amendment stop under Terry.

. See United States v. Knox, 839 F.2d 285, 296 (6th Cir.1988) (Jones, J., concurring) (concluding "since a valid Terry seizure is, by definition, not a ‘full seizure’ — a term synonymous with ‘arrest’ — a person properly seized on reasonable and articulable suspicion for a brief investigatory detention could never be considered ‘in custody’ so long as the scope and duration of the Terry stop do not exceed the underlying justification”); see also United States v. Manbeck, 744 F.2d 360, 379 n. 30 (4th Cir.1984) (‘‘[T]here are two types of seizures, one a permissible investigative stop, the second a detention equivalent to arrest. The Supreme Court has implied that custodial interrogations and Terry stops are mutually exclusive, i.e., if one is interrogated in a custodial situation the limits of Terry have necessarily been exceeded.... The type of ‘seizure’ that is similar to ‘custody,’ then, is seizure equivalent to arrest.” (citation omitted)).

. See United States v. Newton, 369 F.3d 659, 673-74 (2d Cir.2004) (recognizing debate among federal courts and citing cases that reached opposite conclusions on same question); see also United States v. Revels, 510 F.3d 1269, 1274 (10th Cir.2007) (holding "although some detentions not rising to the level of a formal arrest may be reasonable within the meaning of the Fourth Amendment, those same detentions may nonetheless create the custodial situation in which Miranda was de *279 signed to operate”); United States v. Perdue, 8 F.3d 1455, 1464 (10th Cir.1993) (holding defendant was in custody under Miranda while being detained under Terry).

. If custody and investigative detention are mutually exclusive, then logically, they must exist on the same continuum because their exclusivity depends upon their relationship to each other. To use an analogy, under the first perspective, if the two concepts are mutually exclusive, then one cannot exist in both states of restraint at the same time, just as one cannot stand up while sitting down. The existence of one state requires the non-existence of the other state. On the other hand, a person can talk while standing or talk while sitting. The existence of speech does not require the non-existence of a person’s body position. Thus, the first perspective views restraint custody and investigative detentions on the same continuum, whereas the second perspective does not.

. Noting that this case only involves the admissibility of Bates’ statements .under the Fifth Amendment, and not the admissibility of tangible evidence seized under the Fourth Amendment, it could be said that the State’s reliance on Bartlett is misplaced because Bartlett discusses Fourth Amendment seizure law, not Fifth Amendment custody law. Yet, this fact highlights the issue addressed here. Bartlett may have discussed Fourth Amendment law, but it was a Fifth Amendment case. Clearly, Fifth Amendment custody and Fourth Amendment seizure are separate analyses. Yet, there is no conceptual difference between an arrest under the Fourth Amendment and an arrest under the Fifth Amendment: a person is just as much under arrest either way. Consequently, the Fourth Amendment seizure and Fifth Amendment custody analyses converge at the point of arrest. The issue is whether seizure and custody converge only at that point or whether they also co-exist on the same continuum at all other points less than arrest.
If the states of custody under the Fifth Amendment exist on the same continuum as the states of seizure under the Fourth Amendment at all points from investigative detentions to arrest, and if an investigative detention is not custody, then a finding that Bates was in an investigative detention under Terry would negate a finding that he was in custody under Miranda. That is the State’s position here: no Miranda warnings were required because Bates was not in custody, and Bates was not in custody because he was merely in an investigative detention under Terry. But if custody and seizure are separate considerations that only converge at the point of arrest but remain separate at all other points, and if the holding that an investigative detention is not custody means only that an investigative detention is not formal arrest custody, then we would need to evaluate whether Bates was in restraint custody under Miranda regardless of whether he was merely being detained under Terry.

. In Florida v. Royer, the Supreme Court appeared to'suggest the same conclusion:
What had begun as a consensual inquiry in a public place had escalated into an investigatory procedure in a police interrogation room, where the police, unsatisfied with previous explanations, sought to confirm their suspicions. The officers had Royer’s ticket, they had his identification, and they had seized his luggage. Royer was never informed that he was free to board his plane if he so chose, and he reasonably believed that he was being detained. At least as of that moment, any consensual *281 aspects of the encounter had evaporated, and we cannot fault the Florida Court of Appeal for concluding that Terry v. Ohio and the cases following'it did not justify the restraint to which Royer was then subjected. As a practical matter, Royer was under arrest.
Florida v. Royer, 460 U.S, 491, 503, 103 S.Ct. 1319, 75 L.Ed,2d 229 (1983); see also Howes v. Fields, — U.S.-, 132 S.Ct. 1181, 1190, 182 L.Ed.2d 17 (2012) ("[T]he ‘temporary and relatively nonthreatening detention involved in a traffic stop or a Terry stop does not constitute Miranda custody.’ ") (quoting Maryland v. Shatter, 559 U.S. 98, 130 S.Ct. 1213, 1224; 175 L.Ed.2d 1045 (2010) (citation omitted)). Other courts have reached this conclusion as well. ■ See cases cited supra note 24.

. In Berkemer Revisited: . Uncovering the Middle Ground Between Miranda and the, New Terry, 77 Fordham L.Rev., 2779, 2795-2811 (2009), the author traces the expansion of Terry from its origin in response to the racial tensions of the late 1960s, through the War on Drugs of the 1980s and 1990s, to post-9/11 America, noting,
Beginning around the time of Berkemer, appellate courts seized on this rationale to condone more intrusive police practices under Terry , that would help police officers more effectively investigate their, suspicion without converting the detention into an arrest. Justified in large part by an officer’s interest in ensuring his own' protection and preventing a suspect’s flight during a Terry stop, most circuits today have approved police use of drawn weapons or handcuffs to restrain criminal suspects. Courts have' also permitted police to demand a suspect to lay prostrate on the ground during a stop and frisk search. In addition, .courts have allowed police to forcibly transport suspects (most notably to a patrol car) under a válid Terry stop.
As a result, lower courts, while maintaining that Terry remains a limited exception, have authorized conduct similar to that associated with custodial arrest without converting that stop into a full-fledged arrest.
Id. at 2805 (citations omitted); see also State v. Sheppard, 271 S,W.3d 281, 289 n. 28 (Tex.Crim.App.2008) (holding “a Fourth Amendment Terry detention is not a custodial arrest, and the üsé of handcuffs does not automatically convert a temporary detention into a Fourth Amendment arrest”).

. See Lefkowitz v. Turley, 414 U.S. 70, 79, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973) ("[T]he price for incriminating answers from third-party witnesses is sufficient immunity to satisfy the imperatives of the Fifth Amendment privilege against compelled self-incrimination.”).

. While Rule 77.3 of the Texas Rules of Appellate Procedure prohibits the citation of unpublished Texas Court of Criminal Appeals opinions as authority, they "can be cited to demonstrate conflict among the courts of appeals or to demonstrate how [the Texas Court of Criminal Appeals] and other courts have interpreted and applied constitutional law.” Ex parte Denton, 399 S.W.3d 540, 553 n. 30 (Tex.Crim.App.2013) (orig. proceeding) (Keller, P.J., concurring); see Tex.R.App. P. 77.3.

. In other words, the Court determined that the officer’s interrogation remained non-custodial.